# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

MICHAEL ANDERSON,

      Plaintiff,

v.                                       Case No. 18-13697

DETROIT TRANSPORTATION CORPORATION
and BRENDA WALKER,

      Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING WITHOUT PREJUDICE PLAINTIFF'S PWDCRA CLAIM AGAINST DEFENDANT BRENDA WALKER INDIVIDUALLY, AND ORDERING ADDITIONAL BRIEFING

Plaintiff Michael Anderson sues Defendant Detroit Transportation Corporation ("DTC") for Family Medical Leave Act ("FMLA") interference and discrimination, Americans with Disabilities Act ("ADA") retaliation, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") retaliation. (ECF No. 29, PageID.206-13.) Anderson also sues DTC's Human Resource Director, Defendant Brenda Walker, for FMLA interference and discrimination, and PWDCRA retaliation. (*Id.*, PageID.202, ¶ 20; *id.*, PageID.208-13.) Anderson alleges that he was unlawfully fired from his employment as a Transit Police Officer. (*Id.*, PageID.202, ¶ 17.) Anderson moves for summary judgment against Defendants on Anderson's claim of FMLA interference. (ECF No. 31.) Defendants move for summary judgment on all grounds of Anderson's complaint. (ECF No. 32.) Both motions have been fully briefed. (ECF Nos. 35, 35, 38, 39.) The court

finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, both Anderson's and Defendants' motions will be denied.

## I. BACKGROUND

The facts below are uncontested except where specifically noted. Fed. R. Civ. P. 56(a).

Anderson began working as a Transit Police Officer with DTC in 2009. (ECF No. 31-2, PageID.279.) Transit Police Officers serve as "sworn police officer[s] with full apprehension and arrest powers" and operate primarily in "facilities owned[,] controlled, or operated by the [DTC] and Detroit Department of Transportation." (ECF No. 32-5, PageID.582.)

On December 21, 2017, Anderson's doctor, Matthew Wietrzykowski, submitted a letter to DTC stating that Anderson could not work from December 21, 2017 to January 3, 2018 due to elevated blood pressure. (ECF No. 31-4, PageID.358.) Anderson took the time off. (ECF No. 31-2, PageID.310; ECF No. 32-17, PageID.638.) While Anderson was on leave, on January 2, 2018, Dr. Wietrzykowski completed an FMLA form for Anderson relating to symptoms from Cervical Disc Disease. (ECF No. 31-3.) The FMLA request indicated that Anderson's condition caused intermittent pain, treated and controlled by pain medication. (*Id.*, PageID.355.) Prescriptions included Flexeril 10mg, Norco 325/10, and Morphine Sulphate 10mg. (*Id.*, PageID.356.) The request sought FMLA leave for occasional late arrivals, early departures, and absences. (*Id.*, PageID.355.) Dr. Wietrzykowski identified the frequency as one or two times per month. (*Id.*)

Anderson returned to work on January 4, 2018. (ECF No. 31-2, PageID.310.) On January 5, 2018, Walker, acting on behalf of DTC, sent a letter to Anderson informing him of his benefit options, including short-term disability. (ECF No. 32-17.) The letter referred back to Anderson's leave starting on December 21, 2017 and indicated that "disability benefits and paid sick or vacation time runs concurrent with FMLA." (*Id.*, PageID.638.) There is dispute over whether Anderson informed Walker, the HR supervisor, that he had returned to work on January 4. Anderson testified that he spoke to Walker on the phone on January 4 and telling Walker that he was "on shift." (ECF No. 31-2, PageID.311.) Anderson also claimed that Walker would have known that he had returned to work given that Anderson was on the Detroit Auto Show work schedule, which would have been presented to Walker. (*Id.*) In contrast, Walker testified she was unaware of Anderson's return until almost two weeks later, on January 17, 2018. (ECF No. 32-9, PageID.614.)

On January 11, 2018, Dr. Wietrzykowski confirmed via fax that Anderson's prescriptions would not prevent Anderson from performing "all of the essential functions of his job, which may include the use of a firearm." (ECF No. 32-18, PageID.644.) That same day, Walker approved Anderson's FMLA request submitted on January 2. (ECF No. 31-5.) The letter of approval indicated that Anderson was entitled to take a combined 480 hours over the course of the next year, until the end of December 2018. (*Id.*, PageID.360.) The letter again emphasized that other leave, "such as disability leave and workers' compensation[,] . . . runs concurrently with . . . FMLA leave." (*Id.*)

On January 18, 2018, Walker called Anderson into her office. (ECF No. 31-2, PageID.327; ECF No. 31-6, PageID.381.) Walker informed Anderson that he needed to

submit to a drug test and ordered Anderson to leave work. (ECF No. 31-2, PageID.328; ECF No. 31-6, PageID.381-82.) There is no indication in the record that Walker told Anderson that being ordered off work constituted FMLA leave. Walker testified that her short conversation with Anderson was essentially limited to telling Anderson to "report to [the drug test provider] . . . to have this drug screen performed" and that Walker would "contact [Anderson] when [Anderson is] able to come back to work." (ECF No. 31-6, PageID.381-82.) Anderson himself testified that "[Walker] never gave me a reason why I was off." (ECF No. 31-2, PageID.311.) That same day, Walker sent Anderson a letter specifying that Anderson had not provided DTC with a "return to work note from [Anderson's] doctor" and had not obtained a "verifiable negative . . . drug test result[]" prior to Anderson returning to work. (ECF No. 32-21, PageID.650.) The letter nowhere indicated that Anderson was being taken off work because of his health issues or that his absence from work while he obtained the necessary documentation to return to work was counted as FMLA leave.

Anderson performed a drug test on January 18. Before the results had come back, on January 23, Anderson sent Walker and Barbra Hanson, DTC's General Manager, a letter asking why he was placed off work. (ECF No. 31-7, PageID.396.) Anderson stated in the letter that he was "[never] notified verbally or in writing an exact reason why [he was] off work." (*Id.*) Walker responded via letter that same day, reiterating that Anderson had failed to provide a return to work note from his physician and had not obtained a passing drug test result before beginning work, mentioning that Anderson had admitted taking prescription medications. (ECF No. 31-8, PageID.398.)

Walker again provided no indication that Anderson's leave was in any way related to FMLA or pain caused by Cervical Disc Disease.

On February 3, 2018, Walker testified that he received the results from Anderson's drug test. Anderson tested positive, at over 15,000 ng/ml, for Morphine, 8,844 ng/ml in Hydrocodone, and 2,563 ng/ml Hydromorphone. (ECF No. 32-22, PageID.652.) However, Walker admitted that Anderson had obtained a "verified negative" from the Medical Review Officer ("MRO"), who oversaw the drug test. (ECF No. 31-6, PageID.384-85.) Walker explained that this was due to the MRO confirming with Anderson and his doctor that Anderson was prescribed the drugs for which he tested positive. (*Id.*)

No evidence is produced concerning communications between Walker and Anderson for the next few weeks. On February 22, 2018, Anderson was ordered to undergo an Independent Medical Evaluation ("IME") to determine his ability to serve as a Transportations Security Officer while taking the medications prescribed by his doctor. (ECF No. 31-2, PageID.319; ECF No. 32-25, PageID.669.) On February 22, Walker also sent Anderson an explanation of benefits letter with almost exactly the same content as Walker's January 5 letter. (ECF No. 32-23.) The letter's subject concerned "Explanation of Benefits during a Short Term Disability Leave of Absence." (*Id.*, PageID.654.) The letter indicated that Anderson's last day of work was January 18, 2018 and that "disability benefits and paid sick or vacation time runs concurrent with FMLA." (*Id.*)

After receiving the results of the IME, Walker sent Anderson a letter on March 2, 2018. (ECF Nos. 32-24, 32-25.) Walker informed Anderson that he was "found not fit for

duty with the medications you are presently taking." (ECF No. 32-25, PageID.669.) Walker added that Anderson will be provided paperwork to register for short-term disability. (*Id.*)

Following Walker's March 2 letter, Anderson and Dr. Wietrzykowski communicated with Walker in an attempt to get Anderson back on the job. Dr. Wietrzykowski sent a message to Walker on March 8 predicting that medication would not be detected in Anderson for testing after March 30. (ECF No. 31-11, PageID.414.) Walker sent Anderson a letter on March 20 stating that his FMLA leave time, originally approved on January 11, would expire on April 5. (ECF No. 32-27, PageID.673.) Walker followed up with a letter on March 29 stating that Anderson could return to work only after taking a drug test and obtaining a "verifiable negative" result. (ECF No. 31-12, PageID.416.)

Anderson took his second drug test on April 4. (ECF No. 31-13.) The results again tested positive for Hydrocodone and Hydromorphone. (*Id.*, PageID.418.) However, the MRO who conducted the test provided Anderson with a "verified negative." (*Id.*, PageID.419.) Walker herself described the results as "verified negative." (ECF No. 31-6, PageID.390.)

On April 20, Walker sent Anderson a termination letter ending his employment with DTC. (ECF No. 32-32.) Walker stated that Anderson "used all of [his] allotment of eligible hours and . . . exhausted [his] leave time under the [FMLA]." (*Id.*, PageID.683.) Walker titled the letter "Exhausted Family Medical Leave Act (FMLA) Time." (*Id.*) Walker's calculation for Anderson's FMLA leave time included days after January 18, when Walker ordered Anderson off work. (ECF No. 31-14, PageID.421-24.) Walker

charged FMLA time against Anderson starting on January 22, eight hours per day, and up until April 6. (*Id.*)

Anderson filed a complaint with the Department of Labor on July 19, alleging violations of FMLA on the part of DTC. (ECF No. 31-16.) After over a month investigating, the Department of Labor found that "Mr. Anderson did not exhaust his 12 weeks of FMLA leave when he was fired." (ECF No. 31-17, PageID.437.) Specifically, the investigation found that "[t]he period from 1/18/2018 to 3/2/2[0]18 should not be counted as FMLA leave because this period is chosen by the ER to conduct evaluation and make [a] decision." (*Id.*) The Department of Labor found that "[Anderson's] FMLA leave actually started from [3/3/208]" and "Anderson did not expire his approved FMLA leave when he was fired from his job." (*Id.*)

## II.  STANDARD

To prevail on a motion for summary judgment, a movant must show—point out— that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This

requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility' of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

## III. DISCUSSION

Anderson and Defendants both move for summary judgment on the issue of FMLA interference. Defendants also move for summary judgment on all other claims of Anderson's complaint. The court will address the issues in turn.

### A. Cross Motions for Summary Judgment: FMLA Interference

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)); 29 U.S.C. § 2612(a)(1). "Once the 12-week period ends, however, employees who remain unable to perform an essential function of the position because of a physical or mental condition have no right to restoration to another position under the FMLA." *Edgar*, 443 F.3d at 506; 29 C.F.R. § 825.216(c).

Title 29 U.S.C. § 2615(a) makes it illegal "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA leave rights. To prove an FMLA interference claim, a plaintiff must show that "(1) she was an eligible employee; (2) the defendant is an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). The plaintiff in an FMLA claim must show prejudice as a result of an FMLA violation. "An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003); *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) (citations omitted) ("[I]n an FMLA interference claim, an employer may prove it had a legitimate reason unrelated to the exercise of FMLA rights for terminating the employee. . . . [T]he plaintiff could rebut the employer's reason by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant termination.").

FMLA regulations "make it the employers responsibility to tell the employee that an absence will be considered FMLA leave." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002). Once an employee qualifies for FMLA leave, "[t]he employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee as provided in this section." 29 C.F.R. §

825.300(d)(1). Although "[o]nly one notice of designation is required for each FMLA-qualifying reason per applicable 12-month period," if an employer determines leave to be FMLA-qualifying, it must notify the employee "within five business days absent extenuating circumstances." *Id.*; *see also* 29 C.F.R. § 825.301(a) ("Once the employer has acquired knowledge that the leave is being taken for a FMLA-qualifying reason, the employer must notify the employee."). "The designation notice must be in writing." 29 C.F.R. § 825.300(d)(4). "Failure to follow the notice requirements . . . may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e); 29 C.F.R. § 825.301(e).

The essence of Anderson's argument is that when DTC, acting through Walker, removed Anderson from the job on January 18, it did not notify Anderson that his subsequent absence from work would qualify under the FMLA and consume FMLA leave time. From January 22 until Anderson's removal, Anderson was charged eight hours per day against FMLA leave. When he was fired, Anderson argues he could have used additional days of FMLA leave. By removing him, Anderson claims DTC prevented Anderson from exercising his right to continued FMLA leave, effectively "interfering" with Anderson's FMLA rights. 29 U.S.C. § 2615(a); *Donald*, 667 F.3d at 761.

The facts in this case are complex. The court finds it concerning, at a minimum, that a person tasked with the responsibilities of a "sworn police officer" and clothed with its power, and the right to use necessary physical force to perform relevant work, would be allowed to do so while on substantial dosages of painkiller medication. (ECF No. 32-5, PageID.582.) Nonetheless, Defendants have failed to present evidence that they designated Anderson's time of absence as FMLA leave for weeks after Anderson was

originally removed. Only on February 22, thirty-six days after Anderson's original removal, is there any evidence in the record that Defendants designated the specific leave Anderson was forced to take as FMLA-qualifying. Thus, Defendants did not properly comply with the FMLA as a matter of law. However, a genuine dispute of fact remains over whether Anderson was fired *because of* exhausted FMLA leave as opposed to another, legitimate reason. Fed. R. Civ. P. 56(a).

Defendants main argument is that they notified Anderson of FMLA designation when they responded to Anderson's January 2 FMLA request on January 11. However, that notification was made with regard to the "serious health condition" of Anderson's Cervical Disc Disease. Anderson requested and Defendants approved FMLA leave for "intermittent pain" that may require Anderson "to arrive late [or] leave early or be absent from work." (ECF No. 31-3, PageID.355; ECF No. 31-5.) The FMLA leave was for intermittent leave. (ECF No. 31-3, PageID.355.) The condition was to take Anderson out of work once or twice a month, for one or two hours or a day at most. (ECF No. 31-3, PageID.355.)

All that is on the record from January 18 until February 22 is that Defendants notified Anderson that he was on leave or specifically "administrative leave." Nowhere does the Defense point to a letter designating Anderson's leave as FMLA-qualifying. Nor do Defendants present any evidence that Anderson's forced leave on January 18 was for his "intermittent pain" resulting from Cervical Disc Disease. This is significant because Anderson had no way of knowing that leave designed for occasional back pain that may prevent him from working for an hour or two, once a month, would be applied to procedural violations for coming back to work after taking leave for high blood

pressure. Walker testified that Anderson was told on January 18 that he must obtain a drug test before he returned to work. (ECF No. 31-6, PageID.381-82.) Walker sent Anderson a letter on January 18 telling Anderson that he needed a "verifiable negative" and a "return to work note." (ECF No. 32-21, PageID.650.) On January 23, Walker sent Anderson another letter indicating that Anderson had failed to obtain a drug test complying with DTC's Drug Policy and a doctor's note before returning to work. (ECF No. 31-8, PageID.398.) No further communication took place until February 22.

Defendants refer to testimony from Walker stating that she explained to Anderson that he was on "administrative leave," and thus Anderson should have known he was on FMLA leave. (ECF No. 32-9, PageID.619.) First, the term "administrative leave" would not have, in and of itself, put Anderson on notice that his forced absences were in any way related to FMLA. The plain language of "administrative leave" encompasses among other things disciplinary actions for compliance violations, completely unrelated to a "serious health condition." *See Michael v. Caterpillar Fin. Sevs. Corp.*, 496 F.3d 584, 591 (6th Cir. 2007) (analyzing an employment discrimination suit in which the employee was put on "administrative leave" as a disciplinary action). Notably, the framing of Anderson's forced leave in terms of his failure to fulfill administrative requirements, including the submission of a doctor's note and a drug test complying with DTC's drug policy before reentering work, appear to fit easily within that category.

Second, Walker stated that she did not know when she actually made the statements to Anderson. (ECF No. 32-9, PageID.619.) Without timing, Walker's statements provide little guidance on notice. *See also* 29 C.F.R. § 825.300(d)(1)

(requiring employers to give FMLA notice within five-business days). Third, FMLA notice needs to be in writing. 29 C.F.R. § 825.300(d)(4). Walker's oral explanations, even if they were not ambiguous, would be insufficient. Fourth, Walker herself explained that "administrative leave" is a discretionary leave granted by management and has no formal, documented policy which could potentially connect it to a "serious health condition" under the FMLA. (ECF No. 35-5, PageID.865-66.) In line with Walker's testimony, DTC's "administrative procedure" makes no mention of "administrative leave," although it does reference "leave of absence," which itself would not necessarily encompass FMLA. (ECF No. 36-1.)

Fifth, any reference to employee guidelines or handbooks regarding "administrative leave" generally is unavailing. Defendants' letter to Anderson after his leave on December 21, 2017 explained only that "disability benefits and paid sick or vacation time runs concurrent with FMLA." (*Id.*, PageID.638.) It contained no reference to "administrative leave." (*Id.*) "DTC Administrative Procedure" on FMLA leave states that "[a]ny other type of leave, such as disability leave and workers' compensation, is counted toward the 12-week total leave entitlement under the FMLA." (ECF No. 32-4, PageID.574.) To the extent the policy refers to "any other type of leave," it does not establish proper FMLA notice. No employee, or employer for that matter, would understand that any and all leave, whether it is for discipline, administrative compliance, or serving on a jury, falls within the ambit of a "serious health condition" covered by the FMLA. The rest of the policy restates that if an employee took disability leave or its equivalent, such as workers compensation, it would be counted against FMLA. This is largely intuitive and does not require additional explanation. Furthermore, FMLA is

designed to allow employees to be formally notified of FMLA designation. Providing notice of a different type of leave not obviously related to FMLA, without any reference to FMLA, will not constitute adequate notice simply by placing a provision in the employee handbook that ties that other leave to FMLA.

All signs and reasonable interpretations taken from Defendants' communications with Anderson regarding leave from January 18 until February 22 point toward Anderson failing to complete the proper steps of returning to work, not a result of a "serious health condition that makes the employee unable to perform the functions of the position," which would be covered by the FMLA. *Moran*, 788 F.3d at 204; *Edgar*, 443 F.3d at 506; 29 U.S.C. § 2612(a)(1). Defendants approved Anderson's FMLA request for occasional and sporadic leave, which included a description of Anderson's painkillers, without registering any objection to the painkillers. It would have been reasonable for Anderson to conclude that Defendants had no objection to him working while taking the medication, so long as it was prescribed and verified by Anderson's physician. This is bolstered by the facts that, 1) Defendants repeatedly informed Anderson that he needed to obtain a "verified negative" drug test before beginning work and that, 2) Anderson did in fact obtain a "verified negative" result upon the MRO's consultation with Anderson's doctor. (ECF No. 32-21, PageID.650.; ECF No. 31-12, PageID.416.; ECF No. 31-6, PageID.384-85, 390.) With these facts in mind, how would Anderson know that taking his prescribed painkillers would, in and of itself, trigger long-term and continual FMLA leave?

The parties admit that taking opioids while performing a job equivalent to a police officer could "make[] the employee unable to perform the functions of the position" and

thus potentially may qualify for FMLA leave.[1] However, the FMLA leave Defendants forced Anderson to take starting January 18 was based on a FMLA-qualifying condition separate and distinct from the FMLA leave that Defendants previously approved for Anderson. To claim otherwise would imply that the effect of any treatment of a "serious health condition" is itself a "serious health condition." Defendants cite no caselaw for this broad and expansive definition, which if accepted would substantially alter the scope and impact of the FMLA designation requirement. Thus, if Defendants sought to charge Anderson with FMLA leave due to Anderson's medication, they needed to notify him of the designation in writing. And this they did not do.

It was only on February 22 that a communication from Defendants appears to comply with the FMLA designation requirement. Defendants' February 22 correspondence referred to Anderson's original departure on January 18, tied the departure to "Short Term Disability Leave of Absence," and stated that "disability benefits and paid sick or vacation time runs concurrent with FMLA." (ECF No. 32-23, PageID.654.) No evidence is produced indicating that Anderson received the letter. It is also open to question whether or not it qualifies as an FMLA designation notice. The

---

[1]     Anderson maintains that at no time did his use of prescriptions drugs qualify for a "serious health condition." (ECF No. 31, PageID.260, 264-66; ECF No. 38, PageID.1057-58.) Anderson correctly admits, however, that his contention is disputed by the IME which found that he was unable to perform his job while taking the drugs. (ECF Nos. 32-24, 32-25.) Anderson argues, and the court agrees, that this distinction is largely immaterial. Up until Anderson was provided some notice, albeit questionably compliant with the FMLA, on February 22 or March 2, Anderson was not provided written notice that Defendants believed his use of medication qualified for FMLA leave, as opposed to a general "administrative leave" for seemingly failing to comply with certain return-to-work requirements. Even if leave after February 22 was based on a "serious health condition," leave up to that time was not properly designated by Defendants.

letter is far from explicit that Anderson's leave up to that point counted as FMLA. Further, the letter is substantially different from the FMLA form notice the Department of Labor publishes, and different as well from the notice Defendants used to approve Anderson's FMLA request on January 11. U.S. Department of Labor, Designation Notice (Family and Medical Leave Act) (2009). (ECF No. 31-5.) Later, on March 2, when Defendants notified Anderson of the IME results and that he was not fit to serve due to his medication, Defendants mentioned that Anderson will be provided with short-term disability paperwork. (ECF No. 32-25, PageID.669.) Again, although a far cry from being clear, concise, and explicit, the March 2 letter can be identified as FMLA notice. The Department of Labor and Anderson agree that it provided notice, albeit imperfectly.

Even assuming that the February 22 letter is a designation notice, Defendants failed to provide notice for thirty-five days. Given that Defendants began counting the FMLA leave starting on January 22, Anderson was deprived of a total of 184 hours of FMLA leave at the time of termination. For FMLA interference elements, Defendants argue that Anderson's consumption of medication in itself constituted a "serious health condition" that qualified for FMLA leave. The court deems it admitted that Anderson was "an eligible employee," that Defendants were "an employer as defined under the FMLA," and that Anderson "was entitled to leave under the FMLA." *Donald*, 667 F.3d at 761. Defendants do not contest that Anderson gave Defendants "notice of [his] intention to take leave" and no reasonable juror could find this requirement lacking. *Id.*; *Anderson*, 477 U.S. at 248. "While an employee need not expressly assert rights under the FMLA or even mention the FMLA . . . the employee must give the employer enough information for the employer to reasonably conclude that an event described in FMLA . .

. has occurred." *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005) (citations removed). Anderson made it known that he was taking medication that Defendants themselves strongly believed constituted "an event described in FMLA." *Id.* Evidence is uncontested that Defendants were "reasonably apprise[d]" of Anderson's FMLA leave, especially considering Defendants' active participation in bringing it about. *Id.* at 486, 488 (quoting *Calvin v. Honda of Am. Mfg.*, 346 F.3d 713, 725 n.8 (6th Cir. 2003)) (recognizing that an employer could have sufficient notice where it "had actual notice of [the employee's] potential need for leave because [the employee's] supervisor had actual knowledge of his condition.").

There is also no genuine dispute of fact that the last element of FMLA interference, denial of FMLA benefits to which the employee was entitled, is met if Defendants fired Anderson because of FMLA exhaustion alone. Fed. R. Civ. P. 56(a); *Donald*, 667 F.3d at 761; *see Banks v. Bosch Rexroth Corp.*, 610 Fed. App'x 519, 523-26 (6th Cir. 2015) (accepting that an employee could bring an FMLA interference claim where he or she was fired for FMLA exhaustion despite being entitled to more FMLA leave). Defendants stated in their termination letter that Anderson was terminated because he "did not return to work before the 12 weeks of FMLA leave was exhausted." (ECF No. 32-32, PageID.683.) The letter is titled "Exhausted Family Medical Leave Act (FMLA) Time." (*Id.*) Defendant's calculation of Anderson's FMLA time was flawed. Defendants determined that Anderson's leave cut off on April 6, but in fact, Anderson was still entitled to more than four additional weeks of full-time leave past April 6, pushing eligibility into May. This is past even the effective date of termination, April 20. Thus, if Defendants terminated Anderson solely because he exhausted his FMLA leave,

Defendants denied Anderson the benefits of FMLA's twelve-week leave and Anderson's FMLA interference claim will be successful.

However, Defendants present a legitimate and independent reason for Anderson's termination, creating a genuine issue of fact for trial. *Arban*, 345 F.3d at 401; Fed. R. Civ. P. 56(a). Defendants argue that Anderson was taking a substantial dosage of painkillers, which prevented Anderson from performing a security-sensitive job.

Anderson may rebut this explanation as "ha[ving] no basis in fact, . . . not motivat[ing] the termination, or . . . insufficient to warrant termination." *Donald*, 667 F.3d at 763. Defendants argue that Anderson's drug test violated DTC's drug policy, yet Defendants' argument has weak support in the law and the record. The policy states that "[a]ll covered employees are prohibited from reporting to duty or remaining on duty any time there is a quantifiable presence of a prohibited drug in the body above the minimum thresholds defined in 49 CFR Part 40, as amended." (ECF No. 32-7, PageID.596.) Anderson's tests results were above the drug test thresholds contained in 49 C.F.R. § 40.87, but Defendants omitted significant qualifiers in their explanations.[2] C.F.R. § 40.137(d) explicitly provides that if an MRO "determine[s] there is a legitimate

---

[2]     The cutoff for Morphine is 2,000 ng/mL. 49 C.F.R. § 40.87. Anderson tested positive for over 15,000 ng/mL in his January 18 drug test. (ECF No. 32-22, PageID.652.) The cutoff for Hydrocodone and Hydromorphone is 300 ng/mL for an initial test and 100 ng/mL for a confirmatory test. 49 C.F.R. § 40.87. Anderson was found to have 8,844 ng/mL in Hydrocodone and 2,563 ng/mL in Hydromorphone. (ECF No. 32-22, PageID.652.)

medical explanation" for a presence of semi-synthetic opioids, for which Anderson tested positive, the MRO "must verify the test results as negative."[3]

Notably, Walker's letters to Anderson stated that Anderson needed to obtain a "verifiable negative" to return to work. (ECF No. 32-21, PageID.650.; ECF No. 31-12, PageID.416.) Walker admitted in testimony that Anderson obtained a verified negative for both of his drug tests. (ECF No. 31-6, PageID.384-85, 390.) There is no other evidence contradicting Walker's statements. Lastly, Walker's predecessor, Parnell Williams, whom Walker replaced in September 2017, stated that a negative result from an MRO would result in the employee being "place[d] . . . back in their position." (ECF No. 31-9, PageID.407.)

However, a reasonable juror could nonetheless conclude that simply by being over the drug thresholds—whether or not the test is later verified as "negative"—violates the drug policy. The policy refers to "the minimum thresholds defined in 49 CFR Part 40" and does not mention the qualifiers of MRO verification. Common sense supports the idea that Defendants' policies would not allow Anderson to work as a peace officer while taking high dosages of opioids. Although the strength of the argument is open to question, there remains an issue of fact as to the legitimacy of Defendants' independent reason for termination. Fed. R. Civ. P. 56(a).

---

[3] This adds further credence to finding that Anderson did not receive proper notice from January 18 to February 22. If Anderson's medication use did not violate even Federal Regulations which DTC's drug policy is arguably bound, Anderson would have even less reason to think that his forced leave was based on a "serious health condition that makes [Anderson] unable to perform the functions of the position." *Edgar*, 443 F.3d at 506.

A reasonable jury could find that Anderson was in fact terminated for this non-FMLA reason. It is true that the termination letter explicitly stated Anderson was terminated due to a failure to return to work after twelve weeks of FMLA leave. (ECF No. 32-32, PageID.683.) Walker herself testified to firing Anderson due to FMLA exhaustion. (ECF No. 31-6, PageID.392-93.) Nonetheless, Defendants placed Anderson on FMLA because of his medication use. Defendants had Anderson undergo an IME, which found that Anderson was unable to perform his job. Anderson continued to take substantial quantities of opioid painkillers while performing a job that required the ability to possess and safely handle a loaded firearm, and while being tasked with protecting Defendants' customers from crime and violence. Under these facts, with all reasonable inferences taken in favor of Defendants, a jury could find "dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Moran*, 788 F.3d at 204; *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). Dismissal for inability to perform could have reasonably occurred on the date that Anderson was fired on April 20, 2018.

Anderson's motion for summary judgment on FMLA interference will be denied, but the issues have narrowed. There is no genuine dispute of fact that Defendants did not provide proper FMLA notice to Anderson. If Defendants fired Anderson on April 20 because of FMLA exhaustion alone, Defendants interfered with Anderson's FMLA rights and Anderson will be entitled to recovery. If the jury concludes that Defendants fired Anderson due to his prescription drug use and the drugs' effect on Anderson's performance, notwithstanding Defendants' failure to comply with FMLA designation requirements, and that justification complies with Defendants' own policies, there was

legitimate reason for termination and Defendants will not be liable. For the same reasons provided above, Defendants' motion will be denied.

### B. Defendants' Motion for Summary Judgment: FMLA Discrimination, ADA and PWDCRA Retaliation, and Walker's Individual Liability

Defendants move for summary judgment on the rest of Anderson's claims. First, Anderson alleges FMLA discrimination. 29 U.S.C. § 2615(a)(2) makes it illegal "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. "Specifically, an employer is prohibited from discriminating against employees who have used FMLA leave, nor can they use the taking of FMLA leave as a negative factor in employment allegations. This prohibition includes retaliatory discharge for taking leave."[4] *Arban*, 345 F.3d at 403 (quoting 29 C.F.R. § 825.220(c); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).

Anderson must first "[make] a prima facie case for FMLA retaliation." *Marshall v. The Rawlings Co.*, 854 F.3d 368, 381 (6th Cir. 2017). Anderson must show that he "availed [himself] of a protected right under the FMLA; [his] employer knew [he] availed [himself] of [his] right under the FMLA; [he] suffered an adverse employment action; and there was a causal connection between the exercise of [his] rights under the FMLA and the adverse employment action." *Id.* (citations removed); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012). "The burden of proof at the prima facie stage is

---

[4]    The finding that any negative employment action taken against an employee for using FMLA constitutes retaliation under the FMLA's statutory language, which protects employees who "oppose[] any practice made unlawful," is not necessarily a given. 29 U.S.C. § 2615(a)(2). Use of FMLA rights and "opposing" illegal behavior are not inherently the same thing. The court more fully discusses this paradox below in its reasoning on the ADA and PWDCRA.

minimal; and the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Seeger*, 681 F.3d at 283 (quoting *Dixon v. Gonzales*, 381 F.3d 324, 333 (6th Cir. 2007)). After Anderson presents a prima facie case of FMLA retaliation, Defendants must "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Marshall*, 854 F.3d at 382. Anderson can rebut any alleged non-discriminatory justification for termination by "establish[ing] pretext [through] showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger*, 681 F.3d at 285 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

The parties do not dispute the first three elements of the claim. Anderson requested intermittent FMLA leave for his back pain on January 2. *Marshall*, 854 F.3d at 381. Defendants "knew [Anderson] availed [himself] of [his] right under the FMLA" when Walker sent Anderson a letter on January 11 accepting his FMLA request. *Marshall*, 854 F.3d at 381.

For the third element, Anderson points to several "adverse employment actions." *Marshall*, 854 F.3d at 381. "A materially adverse employment action in the retaliation context consists of any action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Michael*, 496 F.3d at 596 (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Anderson describes how he was ordered off work on January 18. Anderson was then placed on "administrative leave" for weeks. Defendants had Anderson tested in an IME on February 22. As a result of that test, Defendants changed Anderson's leave from paid to

unpaid. (ECF No. 32-25, PageID.669 ("Pursuant to [the] information [obtained from the IME] being shared with [DTC], your administrative leave, with pay, will end effective Friday, March 2, 208."); ECF No. 32, PageID.454, ¶ 39 ("DTC ended Plaintiff's paid leave on 03/02/18.").) Anderson was required to take FMLA leave while being absent from work and was ultimately fired. Being forced to leave work, being placed on leave without pay, having FMLA protections used up unwillingly, and being terminated constitute actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Michael*, 496 F.3d at 596. At the very least, a reasonable juror could find so.

The final element of Anderson's case, "a causal connection" between Anderson's FMLA leave and the adverse employment actions, is more contested. *Marshall*, 854 F.3d at 381. The issue ties closely with the requirement that Defendants "articulate a legitimate nondiscriminatory reason for the adverse employment action" after a prima facie claim has been made. *Marshall*, 854 F.3d at 382.

Defendants refer the court to their ADA/PWDCRA positions and claim that Anderson's FMLA leave expired and was still unable to return from work. A reasonable juror could find that Defendants justified Anderson's dismissal solely on FMLA exhaustion. A jury could then infer improper intent, given that Anderson's FMLA leave did not expire when Defendants claim it did. A jury could conclude that Anderson's termination was in bad faith and was really in retaliation for requesting FMLA leave. *Anderson*, 477 U.S. at 248. A juror could also reasonably conclude that Defendants' other adverse actions, taken within weeks of Anderson requesting FMLA leave, were taken as retaliation. *Id.*; *Seeger*, 681 F.3d at 283-84 (considering temporal proximity in

an FMLA discrimination claim to show causation). Anderson's drug tests were "verified negatives," which Walker herself described as necessary to return to work. (ECF No. 32-21, PageID.650.; ECF No. 31-12, PageID.416.; ECF No. 31-6, PageID.384-85, 390.) Federal regulations, to which DTC is bound, confirm this. 49 C.F.R. § 40.137(d). Further, Walker's predecessor Parnell Williams stated that a verified negative would result in the employee being "place[d] . . . back in their position." (ECF No. 31-9, PageID.407.) Although there is a genuine dispute over whether DTC's drug policies still precluded Anderson from working despite verified negative results, these facts bolster a potential finding of retaliatory intent. Anderson is required to meet only a minimal level of proof of "some credible evidence that enables the court to deduce that there is a causal connection." *Seeger*, 681 F.3d at 283. The court finds sufficient evidence for Anderson's prima facie case to survive summary judgment. Fed. R. Civ. P. 56(a).

Defendants argue that the adverse actions were based on Anderson's consumption of opioid medications, an independent non-discriminatory reason for termination. As described above in the court's FMLA interference analysis, there is a genuine dispute over whether this reason was sufficient to warrant termination or in fact caused Anderson's termination. *Seeger*, 681 F.3d at 285. Nonetheless, even if Defendants could have permissibly terminated Anderson, a reasonable juror could find Defendants' alternate explanation pretextual. The IME report was written by a qualified medical professional and did conclude that Anderson was unable to work. (ECF Nos. 32-24, PageID.666.) The report could have served as a basis of removal, especially considering the high dosage of opioids for which Anderson tested positive. In contrast, Anderson's doctor concluded that Anderson could perform his job adequately and

safely. (ECF No. 32-18, PageID.644.) Walker also removed Anderson from working due to his drug test results, despite Anderson receiving a verified negative. Walker's own communications with Anderson, federal regulations, and the testimony of Williams indicate that Anderson should have returned to work after this test result. A reasonable jury could fairly conclude that Anderson's removal from work violated DTC's policy and practice. Combined with Defendants' failure to properly designate Anderson's leave as FMLA, a genuine issue of fact emerges over whether Defendants' non-discriminatory justification for termination was pretext. Fed. R. Civ. P. 56(a).

The next issue on which Defendants move for summary judgment is Anderson's retaliation claim under both the ADA and the PWDCRA. ADA retaliation claims have structures very similar to FMLA retaliation. 42 U.S.C. § 12203(a) provides that "[n]o person may discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." "The plaintiff bears the initial burden to establish a prima facie case of retaliation, which requires a showing that (1) the plaintiff engaged in protected activity; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)). Proof of a prime facie case "is a low hurdle." *Id.* (quoting *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001)). The defendant must then "show that it had a legitimate, non-discriminatory basis" for its actions. *A.C.*, 711 F.3d at 697. The plaintiff

can rebut this alternative explanation proving pretext, in that the defendant's proffered

reasons "(1) lack a basis in fact, (2) did not actually motivate the [adverse actions], or

(3) were insufficient to motivate the [adverse actions]." *Id.* at 702.

"[T]he [ADA] . . . and the PWDCRA share the same purpose and use similar

definitions and analyses, and [Michigan state] courts have relied on the ADA in

interpreting the PWDCRA." *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 405 (Mich.

Ct. App. 1999). However, the Michigan Supreme Court has said that "because the two

acts are not identical, and because federal laws and regulations are not binding

authority on a Michigan court interpreting a Michigan statute, we caution against simply

assuming that the PWDCRA analysis will invariably parallel that of the ADA." *Peden v.

City of Detroit*, 470 Mich. 195, 217 (2004). The PWDCRA and the ADA have the same

elements of proof for retaliation claims. *Aho v. Dept. of Corr.*, 688 N.W.2d 104, 108-09

(Mich. Ct. App. 2004) (citing *Bachman v. Swan Harbour Assoc.*, 653 N.W.2d 415, 437

(Mich. Ct. App. 2002)).

Defendants do not dispute the first three elements of retaliation under the ADA

and PWDCRA. First, Anderson argues that his request for FMLA leave for his back

condition constituted "protected activity" under both statutes. Under the ADA, "requests

for accommodation are protected acts." *A.C.*, 711 F.3d at 698; *Byson v. Regis Corp.*,

498 F.3d 561, 577 (6th Cir. 2007). Requesting accommodation for a "serious health

condition," qualifying for FMLA leave, can serve as a "protected activity" under the ADA.

*Hurtt v. Int'l Servs., Inc.*, 627 Fed. App'x 414, 422-23 (6th Cir. 2015). However, the court

notes the rather detached nature of this legal reasoning from the text of the ADA

statute. Requesting FMLA leave does not involve "ma[king] a charge, testif[ying],

assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing" relating to ADA discrimination protections. 42 U.S.C. § 12203(a). Instead, the textual hook is "oppos[ing] any act or practice made unlawful by [the ADA]." *Id.* Yet requesting FMLA only tangentially relates to opposition against unlawful discrimination. Simply requesting leave does not necessarily mean that the employer has already threatened to fire or otherwise take adverse action because of a "serious health condition," which would be protected under the FMLA's leave provision. An example that appears applicable is an employee confronting an employer who denies FMLA leave despite the employee qualifying for FMLA leave. The Sixth Circuit has even said that "[p]rotected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." *Rorrer*, 743 F.3d at 1046. The court finds it unlikely that the ADA's retaliation provision is designed to be a catchall for all actions taken by an employer that negatively affect the employee's ability to exercise ADA rights, regardless of whether such actions were taken in retaliation against opposition to an ADA violation.[5]

Michigan state courts appear to agree. When analyzing ADA's sister statute, the PWDCRA, Michigan courts have denied retaliation claims arising solely from requests for accommodation. In *Bachman*, 653 N.W.2d at 437-438, the Michigan Court of Appeals rejected a PWDCRA retaliation claim based merely on a request for accommodation. The court gave special consideration to the fact that the plaintiff had not proven that the defendant's actions being allegedly "opposed" were violations in the

---

[5]    This is reinforced by the fact that the ADA has an entirely separate provision making it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

first place. The court added that if a plaintiff wished to rely on the opposition prong of the retaliation provision, the plaintiff must "must inform and give notice" to the employer. *Id.*; *see also Parker v. Diamler Chrysler Corp.*, No. 245066, 2004 WL 1103968, at *3 (Mich. Ct. App. May 18, 2004); *Bennani v. Dept. of Mgmt. & Budget*, No. 259538, 2006 WL 2190738, at *3 (Mich. Ct. App. Aug. 3, 2006). Recently, in *Noe v. Dept. of Treasury*, No. 342374, 2019 WL 452164, at *5 (Mich. Ct. App. Feb. 5, 2019), the Michigan Court of Appeals noted that it was presented with no "Michigan authority applying the same reasoning [of the ADA,]" in that requesting an accommodation can be protected activity, "to . . . the PWDCRA."

Nonetheless, because the parties do not dispute the issue, federal precedent is explicit with regards to the ADA, and the Sixth Circuit has previously allowed requests for accommodation to serve as a basis for PWDCRA claims, *Hurtt*, 627 Fed. App'x at 422-23, the court will accept that Anderson's FMLA request is "protected activity."

Anderson also argues that he was retaliated against for filing an EEOC charge on January 31, 2018. In fact, Anderson's complaint specifically refers to his EEOC charge, not his request for FMLA leave. (ECF No. 29, PageID.206, ¶ 49 ("Plaintiff engaged in the protected activity [under the ADA] of filing a disability charge of discrimination with the EEOC."); *id.*, PageID.212, ¶ 84 (Anderson "engaged in conduct protected under the PWDCRA when he filed a charge of disability discrimination with the EEOC.").) This foundation for "protected activity" is on firmer ground under both the ADA and PWDCRA.

If Anderson's request for FMLA leave or his EEOC charge formed the basis of Anderson's protected activity, Defendants indisputably had knowledge. *Rorrer*, 743 F.3d

at 1046. Defendants approved Anderson's FMLA request and contested Anderson's charge before the EEOC. (ECF No. 31-5; ECF No. 35-20, PageID.929-934.)

Anderson directs the court to his FMLA retaliation arguments for the "adverse action" requirement. *Rorrer*, 743 F.3d at 1046. As described above in the court's FMLA analysis, Anderson was removed from work, placed on "administrative leave," forced to undergo an IME, put on unpaid leave for a time, and ultimately fired. Defendants' actions, if taken as retaliation, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Michael*, 496 F.3d at 596.

Evidence of causal connection is also sufficient to survive summary judgment. *Rorrer*, 743 F.3d at 1046. As described above, a reasonable juror could find that suspending Anderson's employment was done against DTC policy and practice. Anderson was still placed on forced leave for months after his filing of FMLA leave and was kept off work after the initiation of his EEOC charge. Anderson was also required to undergo an IME on February 22. A reasonable juror could conclude that Anderson should have be free to return to work after his verified negative drug test result on February 3. Anderson may have been fired solely on Defendants' claim that Anderson's FMLA leave was exhausted, but Anderson had not exhausted his leave at the time of his termination. In the alternative, a reasonable juror could conclude that Anderson was not properly terminated for violating company policy and being unable to perform his job. A reasonable juror can look at all of Defendants' actions, potentially or actually based on questionable premises, and infer discriminatory intent. Combined with the close temporal proximity between the protected activity and the adverse actions, and the "low hurdle" required for proof of a prima facie retaliation claim, the court finds

enough evidence to require a trial. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (recognizing temporal proximity as a relevant consideration in the ADA retaliation context); *Rorrer*, 743 F.3d at 1046; Fed. R. Civ. P. 56(a).

Finally, as described above, Defendants' non-discriminatory justification could reasonably be found to be pretextual. Although the IME did find that Anderson was unable to work and common sense dictates that consuming substantial dosages of opioids undermines a person's ability to perform a security-sensitive position, Anderson's own doctor found that Anderson was able to perform the job. (ECF Nos. 32-24, PageID.666; ECF No. 32-18, PageID.644.) Furthermore, evidence indicates that Anderson should have returned to work with verified negative drug test. A reasonable juror could infer bad faith from Defendants' failure to comply with the FMLA and potentially relying on FMLA exhaustion for termination. Thus, a genuine dispute of fact exists and the court will deny summary judgment for Defendants on ADA and PWDCRA discrimination.

Defendants present a stronger case for summary judgment with regards to individual liability for Walker. Anderson did not sue Walker for ADA retaliation. "Individual supervisors who do not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999). Walker does not own or operate the DTC. Instead, Walker is merely an agent of DTC who happened to supervise Anderson.

The ADA and PWDCRA have extensive crossover. *Chiles*, 606 N.W.2d at 405. Courts commonly make no attempt to differentiate between the two. *See Hurt*, 627 Fed. App'x at 422-23. It is thereby noticeable that Anderson points to no Michigan precedent

that supports his conclusion that the PWDCRA departs from the ADA on such a fundamental matter of liability. Instead, the only cases that discuss the issue are other U.S. District Courts *rejecting* the plaintiffs' claims. *Farhat v. Mich. Dept. of Corr.*, No. 12-10864, 2012 WL 5874813, at *2-4 (E.D. Mich. Nov. 20, 2012) (PWDCRA claims "against Defendants sued in their individual capacity are dismissed because there is no individual liability for these claims."); *Down v. Ann Arbor Pub. Schs.*, No. 17-13456, 2018 WL 6649722, at *4 (E.D. Mich. Dec. 19, 2018) ("Because the ADA does not impose individual liability on supervisors, the Court finds that supervisors similarly may not be held personally liable under the PWDCRA.").

Anderson nonetheless argues that the Michigan Supreme Court's reading of the Elliot-Larson Civil Rights Act, a statute separate and distinct from the PWDCRA, implies that supervisors can be held individually liable under the PWDCRA. *See Elezovic v. Ford Motor Co.*, 472 Mich. 408, 419 (2005). The court will not undertake such a leap in interpretation in the absence of any supporting precedent. However, the court will not grant summary judgment based solely on the PWDCRA's close similarly to the ADA and the PWDCRA's tracking of ADA in different contexts. Individual liability for supervisors is a heavily contested issue on which Michigan courts have not ruled. This is exactly the type of claim that is best reserved for review by the Michigan courts themselves, who have greater experience and interest in clarifying Michigan law. It is not an issue that should be decided by summary judgment in a federal court. Thus, the court will decline to continue exercising supplemental jurisdiction over Anderson's PWDCRA claim against Walker. The dispute is an example of a "claim rais[ing] a novel or complex issue of State law" and will be dismissed without prejudice. 28 U.S.C. § 1367(c)(1); *Beechy v.*

*Cent. Mich. Dist. Health Dept.*, 274 Fed. App'x 481, 482 (6th Cir. 2008) (citations omitted) (finding "the paucity of decisions interpreting [the state statute at issue] and our interest in avoiding the unnecessary resolution of state law issues" warranted denial of supplemental jurisdiction).

Although the parties did not discuss the issue, it appears to the court that Anderson is not permitted to sue Walker as an individual under the FMLA. It is well established under Sixth Circuit law that "[the FMLA] does not impose individual liability on public agency employers." *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003); *Diaz v. Mich. Dept. of Corr.*, 703 F.3d 956, 961 (6th Cir. 2013) (In a claim against a supervisor working for a state agency, the court reaffirmed that "public employers cannot be held individually liable under the FMLA."); *Crugher v. Prelesnik*, 761 F.3d 610, 616 (6th Cir. 2014) (emphasis removed) ("[The FMLA] precludes suits against state officials in their individual capacity"). The court may grant summary judgment sua sponte. Fed. R. Civ. P. 56(f)(3). In order to do so, "the losing party must have had notice that the court was considering summary judgment on the claim, as well as a reasonable opportunity to present its arguments and evidence of the claim." *Aubin Indus., Inc. v. Smith*, 321 Fed. App'x 422, 423 (6th Cir. 2008). Walker worked for DTC at all relevant times and DTC "is an agency of the City of Detroit and a Michigan political subdivision." (ECF No. 29, PageID.200, ¶¶ 2-3.)

The court now provides Anderson notice that it is "considering summary judgment on its own" on the issue of Walker's individual liability under the FMLA. Fed. R. Civ. P. 56(f)(3). Anderson is granted twenty-one days to respond and, unless Anderson concedes the point, Defendants may reply in an additional fourteen days.

## IV. CONCLUSION

Genuine issues of fact remain on all of Anderson's claims. Fed. R. Civ. P. 56(a). Although Defendants did not provide adequate notice of designation to Anderson under the FMLA, there may have been a justifiable reason for Anderson's dismissal independent of the FMLA. Anderson's FMLA interference claim must go to a jury. There are still substantial factual disputes regarding the legitimacy and motivations for the adverse employment actions taken against Anderson, especially Anderson's termination. Anderson's FMLA discrimination, ADA retaliation, and PWDCRA retaliation claims will also survive summary judgment. However, the court will dismiss without prejudice Anderson's PWDCRA claim against Walker individually. The claim involves a novel and complex issue of state law and the court will not continue to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(1). Lastly, the court will allow Anderson to respond to the court's consideration of summary judgment as to Walker's individual liability under the FMLA. Fed. R. Civ. P. 56(f)(3). Accordingly,

IT IS ORDERED that Plaintiff Michael Anderson's Motion for Summary Judgment (ECF No. 31) is DENIED.

IT IS FURTHER ORDERED that Defendants Detroit Transportation Corporation and Brenda Walkers' Motion for Summary Judgment (ECF No. 32.) is DENIED.

IT IS FURTHER ORDERED that Anderson's PWDCRA claim against Walker individually (Count IV) is DISMISSED WITHOUT PREJUDICE.

Lastly, IT IS ORDERED that Anderson shall respond to the court's consideration

of summary judgment as to Anderson's FMLA claims (Count II and Count III) against

Walker individually by February 17, 2020. Defendants may reply by March 2, 2020.[6]

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 27, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, January 27, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                          /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\18-13697.ANDERSON.CrossSummaryJudgment.RMK.RHC.3.docx

---

[6]     Parties may submit a stipulation in lieu of briefing.